JAMES F. MILLIKEN AND ANOTHER *vs.* JOHN F. WARNER
AND ANOTHER.

New Haven & Fairfield Cos., April T., 1892. ANDREWS, C. J., CARPEN-
TER, SEYMOUR, TORRANCE and FENN, Js.

The plaintiffs were theatrical agents and agreed to furnish actors for the
defendants for a certain opera, the defendants agreeing that, instead
of the plaintiffs collecting their commissions from the separate actors,
they would deduct the sums from the compensation paid them, and
pay it over in a single sum to the plaintiffs, to which the actors when
employed agreed. At the defendants' request and for their conven-
ience, the actors when afterwards employed made drafts on the defend-
ants in favor of the plaintiffs for the amount of the commission due
the latter, which were to be held by the plaintiff and delivered to
the defendants when they paid the plaintiffs. Held not to be a col-
lateral promise to answer for the debt of another, and therefore not
within the statute of frauds.
The contract was an original one. There was, when it was made, no ex-
isting contract between the plaintiffs and the actors to which it could
be collateral, and when the actors were employed they made no con-
tract to pay the plaintiffs the commissions, but agreed that they might be
deducted by the defendants from their salaries and paid over by them.
A party can recover no costs for the time during which he has paid costs.
The plaintiffs were nonsuited for not furnishing bonds as ordered by the
court. Afterwards the case was restored to the docket on their motion

on payment of costs. The plaintiffs finally obtained judgment and were allowed full costs. Held to be erroneous so far as it embraced costs that accrued before the nonsuit, except the items of the writ and service, which were properly allowed the plaintiffs.

[Argued April 19th—decided May 28th, 1892.]

ACTION for the recovery of money claimed to be due the plaintiffs as theatrical agents for procuring actors for the defendants; brought, by appeal from a justice of the peace, to the Court of Common Pleas in New Haven County, and tried to the court before *Studley, J.* Facts found and judgment rendered for the plaintiffs, and appeal by the defendants. The case is fully stated in the opinion.

*W. B. Stoddard* and *S. C. Loomis,* for the appellants.

1. The court erred in not holding that this contract was within the statute of frauds. It is clear that the parties primarily liable for the commissions were the actors themselves. The payment was to be made out of their money, and the defendants were simply authorized to take it out and turn it over. It was not agreed or understood that these payments should be made out of money belonging to the defendants. The drafts were delivered to the plaintiffs and are still in their possession. They were to be delivered to the defendants, as vouchers, when the latter should pay over the money. The agreement on the part of the defendants to pay was secondary to that of the actors, and, at most, could only be a guaranty that the actors would pay. The actors were certainly liable for the commissions; the plaintiffs had their written agreement to pay, besides the drafts. The agreement was only incidental and collateral to the agreement of the actors. The fact that the defendants had agreed to pay the commissions in one sum, cannot change the character of the undertaking. Nor can the fact that this parol agreement was made prior to the written agreement of the actors. The most that can be said is that the contract was one of guaranty. It certainly was not an agreement on the part of the defendants to pay their own debt. The debt was the debt of the actors. The actors

were liable to the plaintiffs for these commissions. Three of them paid them directly and the amounts were accepted by the plaintiffs. All of them had signed these contracts and these drafts. The rule is that if the person, for whose benefit the services were rendered, is liable at all, any promise by another person is within the statute. 1 Swift's Dig., side p. 253; *Dillaby* v. *Wilcox*, 60 Conn., 71, 78. The plaintiffs in their brief misstate the true contract that the court has found was made by defendants. It was not that the defendants *themselves* would pay, as they have stated. The finding is that they agreed to pay the plaintiffs *in one sum their commissions*. And this was to come out of the actors' salaries. The plaintiffs claim in their brief that there was no obligation resting upon the actors to pay at the time the agreement was entered into between the plaintiffs and defendants. There was no obligation resting on any one. There could be none until the actors were engaged. There were no commissions earned or due until the plaintiffs had obtained the situation for the actor; no authority for the defendants to pay until the contracts were signed. It was the same duty, the same commissions; not a different agreement, as the plaintiffs argue. The commissions were five per cent per week. The commissions, added up, amount to $66.25, the amount of the judgment. The drafts correspond with this amount. There is nothing in the finding which shows that the defendants received any funds or property of these actors. On the contrary it appears that they had received nothing; such certainly is the fact. The mere possession of property or funds belonging to the original debtor, not deposited with the defendant for the purpose of paying the debt, will not withdraw the promise from the statute of frauds. Browne on Statute of Frauds, § 187; *Weyer* v. *Beach*, 14 Hun, 231; *Ackley* v. *Parmenter*, 98 N. York, 425.

2. The court erred in rendering judgment for the costs which accrued prior to the nonsuit of the plaintiffs.

*C. E. Hoadley* and *J. Wolfe*, for the appellees, cited:—8 Am. & Eng. Ency. of Law, 674, 675; *Reed* v. *Holcomb*, 31

Conn., 360; *Packer* v. *Benton*, 35 id., 343; *Dillaby* v. *Wilcox*, 60 id., 71.

CARPENTER, J.  The finding shows the following facts:—
In March, 1891, the plaintiffs, who were theatrical and
dramatic agents, doing business in the city of New York,
and the defendants, who desired to form and manage
an opera company, entered into a contract by the terms
of which the plaintiffs agreed to procure suitable people to
take the various parts in a certain opera for the defendants,
and the defendants agreed to pay the plaintiffs their com-
missions, in one sum, before the opera company should
leave the city of New York to go upon its route.

The plaintiffs performed their part of the contract to the
satisfaction of the defendants, and demanded payment.
The defendants promised to pay the sum demanded by
the plaintiffs, but requested an extension of time until
the night of the first performance of their company in the
city of New Haven, and also requested the plaintiffs to go
to New Haven upon that night to receive their payment of
this and another claim.  The plaintiffs assented, and after-
wards, on the day appointed by the defendants, went to
New Haven to receive their pay.  At that time it was
evident that the opera would not prove a success.  The de-
fendants then refused to pay the plaintiffs' claim and have
never paid it.

The commissions of theatrical agents are usually paid
by the actors directly, or by them indirectly through the
manager of the theatrical company, in weekly installments
proportioned to the number of weeks stipulated for in the
engagements, but this matter is always a subject of con-
tract between the interested parties, and such contracts are
entered into as are satisfactory to them.

When the defendants applied to the plaintiffs for the-
atrical people, and before the contract in question was
entered into, the plaintiffs, because the defendants were
comparatively inexperienced and unknown in the business,
stated to the defendants that they should require them to

pay the theatrical people whom they should procure for them two weeks' salary in advance when the actors should be accepted by the defendants, so that the plaintiffs might secure their commissions ; the payments to be made in the plaintiffs' office.

The defendants, representing that they had great wealth, offered, if the plaintiffs would forego this requirement, to pay the commissions in one sum before the opera company should leave New York city to go upon its proposed route, they taking upon themselves the responsibility and risk of collecting from the actors at their own convenience or as they could agree with them. The plaintiffs accepted the proposition, and they and the defendants entered into the contract stated in paragraph one.

The defendants paid the actors their first week's salary in the office of the plaintiffs, but the latter did not attempt to collect their commissions or any part thereof from the actors, as they might have done but for the contract with the defendants. Nevertheless, three of the actors insisted upon paying to the plaintiffs their respective portions of the latter's commissions, and the plaintiffs received the sums offered, and deducted the same from the amount of the claim against the defendants.

As the plaintiffs were to be paid by the defendants in one sum, the latter requested the plaintiffs to have each actor make a draft upon the defendants for the sum which the defendants were to collect from each respectively, and to turn over the drafts to the defendants at the time when the latter should pay the plaintiffs according to their agreement. The drafts were drawn from time to time as the actors were engaged by the defendants, were made for the convenience of the latter, were all drawn after the contract between the plaintiffs and the defendants had been entered into, were never presented to the defendants for their acceptance, and as between the plaintiffs and the defendants were understood to be the property of the latter, to be used as they should be able to use them in their dealings with their actors respectively. The drafts are still in the possession of

the plaintiffs. There is now due the plaintiffs from the defendants the sum of $66.25 under the contract.

Upon these facts the defendants claimed that they were not liable for these commissions in this action, but that the actors were alone liable, and that the contract, if any, was within the statute of frauds, and that no action thereon could be maintained, it not being in writing.

The court overruled these claims and rendered judgment for the plaintiffs. The defendants appealed.

The first question presented is, whether the contract between the plaintiffs and the defendants is within the statute of frauds.

The record discloses no contract between the actors or any one of them and the plaintiffs. Had they been employed according to the usual course of that business, there would undoubtedly have been at least an implied promise by each actor to pay to the plaintiffs a commission. Had the contract of the defendants been an undertaking that such a promise should be performed, it would clearly have been within the statute. But the difficulty with the defendants' contention is, that when they contracted with the plaintiffs there was no existing contract with any one of the several people afterwards employed to serve the defendants. And when they were so employed they made no promise to pay the plaintiffs directly, but did agree with the defendants that they might " deduct five per cent each week commission from salary, and remit the same to Milliken & Cortiss." Consistently with that the plaintiffs made no effort to collect from the salaries paid in their office, but relied entirely upon their contract with the defendants. It was then an original contract by the defendants, upon the strength of which the plaintiffs performed the service required of them, giving credit alone to the defendants. There is no room then for the claim that it was collateral to an undertaking of each of the several actors, for no such undertaking then, nor even afterwards, existed. The contract then was not within the statute.

The only other question made is that relating to costs.

After the case came to the Court of Common Pleas the plaintiffs were nonsuited for not furnishing bonds for prosecution as ordered by the court. Afterwards, on motion of the plaintiffs, the nonsuit was set aside, and the case restored to the docket on the payment of costs. Upon the final trial the plaintiffs recovered a judgment, and the court taxed in their favor full costs from the commencement of the suit.

It is well settled that a party can recover no costs for the time during which he has paid costs. *Richardson* v. *Hine*, 43 Conn., 203 ; *Meloney* v. *Somers*, 50 Conn., 520.

The order was not limited as to time, as it might have been. The import of it therefore is that costs were required from the beginning. The defendants had a judgment of nonsuit, which was a final judgment, and costs were taxed, and the costs so taxed were paid by the plaintiffs. That portion of the costs accruing before the nonsuit was improperly taxed.

We are inclined to think however that an exception may well be made of the writ and service. We think the practice has been, in such cases, to allow the plaintiff those items.

There is error only in the matter of taxing costs. The judgment is reversed, unless the plaintiffs will remit the costs improperly taxed, that is $5.45.

In this opinion the other judges concurred.